**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION AT CHICAGO**

| | |
|---|---|
| **NICOLE LURRY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 1:19-cv-08147 |
| ) | |
| **DSC LOGISTICS, LLC,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S COMPLAINT WITH DEMAND FOR JURY TRIAL**

COMES NOW the Plaintiff, NICOLE LURRY ("Plaintiff" or "Lurry"), to file her Complaint against Defendant, DSC LOGISTICS LLC ("Defendant" or "DSC"), and in support she states the following:

**NATURE OF THE CLAIMS**

1. This is an action for monetary damages pursuant to Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 *et seq.* (hereinafter the "ADA"); the Family and Medical Leave Act of 1996, 29 U.S.C. §§ 2601 *et seq.* ("FMLA"); and the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.* ("IHRA") to redress Defendant's unlawful employment practices against Plaintiff, including discrimination, harassment, and retaliation because of her disability leading to Plaintiff's unlawful termination.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under the ADA and FMLA.

1

3. This Court has supplemental jurisdiction over Plaintiff's related claims arising under state law pursuant to 28 U.S.C. §1367(a).

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including Defendant's unlawful employment practices alleged herein occurred in this District.

## THE PARTIES

5. Plaintiff Lurry, is a citizen of the United States, and is, and was at all times material, a resident of the state of Illinois, residing in Will County, Illinois.

6. Defendant DSC is a Delaware LLC with its principal place of business in Des Plaines, Illinois.

7. Plaintiff worked for Defendant at its at 1695 Crossroads Dr., Joliet, Illinois 60431 location.

8. Defendant is an employer as defined by the all laws under which this action is brought and employs the requisite number of employees.

## PROCEDURAL REQUIREMENTS

9. Plaintiff has complied with all statutory prerequisites to filing this action.

10. On May 2, 2019, Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Relations ("IDHR"), against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5(b) and (e) based on disability and retaliation.

11. Plaintiff's EEOC charge was filed within three hundred days after the alleged unlawful employment practices occurred.

12. On September 16, 2019, the EEOC issued to Plaintiff a Dismissal and Notice of Right to Sue upon request.

13. This complaint was filed within ninety days of the issuance of the EEOC's Dismissal and Notice of Rights.

## FACTUAL ALLEGATIONS

14. Plaintiff is a disabled female.

15. Plaintiff was employed by Defendant for approximately two years and eight months. She regularly worked or exceeded forty hours per week. Plaintiff began working for Defendant as a Customer Service Representative and was promoted to Lead Customer Service Analyst and eventually to the Lead Operation Analyst position – all *before* her medical diagnosis.

16. At the time of her unlawful termination Plaintiff was working as a Lead Operation Analyst.

17. While employed by Defendant, Plaintiff satisfactorily performed the job requirements of her position which included supervising Defendant's shipping and receiving departments as well as Defendant's Customer Service Office. Plaintiff was also responsible for scheduling employees, producing daily reports, and training new employees on certain clerical tasks.

18. At all times relevant, Defendant was aware of Plaintiff's disability.

19. Plaintiff had a physical impairment that substantially limited one or more of her major life activities including but not limited to walking and sleeping.

20. Due to Plaintiff's disability Defendant targeted her and subjected her to disparate and discriminatory treatment.

21. In October 2018 Plaintiff fell extremely ill. Due to the severity of her abdominal pain she sought emergency medical treatment at Saint Joseph Medical Center located in Joliet, Illinois.

22. On her way to Saint Joseph Medical Center Plaintiff notified Defendant she would be out of work to seek medical treatment. Specifically, Plaintiff called Defendant's "call off hotline" number and left a voicemail. Plaintiff also called Jeremy Bublitz, Operations Manager, and left a voicemail explaining what happened and that she was seeking emergency medical treatment. Mr. Bublitz replied and simply asked Plaintiff if she would be able to log in and complete her reports for the day. Plaintiff informed Mr. Bublitz she could not as she was hospitalized.

23. After evaluating Plaintiff's condition Saint Joseph Medical Center doctors prescribed Plaintiff pain medications and advised her to follow up with her regular healthcare provider.

24. Upon her release from Saint Joseph Medical Center Plaintiff scheduled an appointment with Nurse Practitioner Linda Hushaw of Primary Care in Joliet, IL for continued evaluation, diagnostic testing, and treatment.

25. Plaintiff's healthcare providers initially diagnosed her with cancer. Naturally, Plaintiff was overwhelmed and terrified of such a serious diagnosis. However, after conducting further testing with a Cancer Specialist, it was determined that Plaintiff did not in fact have cancer. Soon after Plaintiff was properly diagnosed with fibroid tumors in her cervix and ovaries.

26. After three days of leave and following receipt of her proper diagnosis Plaintiff and her healthcare providers realized she would require additional leave to attend to her health.

27. At this time, Plaintiff requested FMLA documents. She eventually received the FMLA documents through Liberty Mutual's online portal and was able to successfully complete them.

28. Plaintiff's FMLA leave was approved and she utilized her protected medical leave from October 28, 2018 through December 9, 2018.

29. Throughout her FMLA leave, Plaintiff kept Defendant abreast of her medical progress and provided James Benda, Human Resources Manager, with documentation from her doctors following each visit.

30. Plaintiff also kept in contact with her subordinates during her leave as her subordinates often emailed and called Plaintiff with work-related questions.

31. During one such phone conversation with Katresa Traylor, Customer Service Representative and Plaintiff's direct report, Ms. Traylor notified Plaintiff that approximately one week into Plaintiff's FMLA leave Defendant hired Gabby Brooks to "replace her [Plaintiff]." Ms. Traylor explained to Plaintiff that Defendant asked Ms. Traylor and other Customer Service Representatives to *train* Ms. Brooks and that Ms. Brooks **had taken over Plaintiff's job duties**.

32. Plaintiff was not overtly concerned at the moment as her health was her focus and Defendant had not given her any indication that her job was in jeopardy due to her disability and use of medical leave.

33. After healing and recovering on December 10, 2018, Plaintiff returned to work.

34. During the normal course of her day on December 10, 2018, Plaintiff bent down to refill Defendant's printer with paper and instantly realized something was wrong as intense and worsening pelvic pain began instantly.

35. Due to the pain Plaintiff left work and sought immediate medical treatment. Plaintiff's doctor recommended she take additional time off to continue healing and undergo additional diagnostic testing.

36. As Plaintiff had not exhausted her FMLA leave, she notified Mr. Benda she required additional medical leave due to her disability. Plaintiff also emailed Mr. Benda requesting the necessary documents to resume her FMLA leave.

37. Mr. Benda directed Plaintiff to contact Betty Hall, Benefits Specialist. Plaintiff complied and emailed Ms. Hall an email entitled "*FMLA Paperwork*" in which Plaintiff requesting information and the necessary FMLA documents.

38. Ms. Hall ignored Plaintiff's communication in an effort to dissuade her from using additional FMLA leave and did not respond to her email.

39. As more time passed and Defendant continued to interfere with Plaintiff's FMLA leave ad she received no response from Ms. Hall. Plaintiff called Mr. Benda to apprise him of the situation and again request the necessary FMLA documents.

40. Searching for answers, Plaintiff reached out to Liberty Mutual. At that time Liberty Mutual notified Plaintiff it was no longer a vendor for Defendant and could not help her.

41. Unable to get any response from Mr. Benda or Ms. Hall, Plaintiff utilized Short Term Disability to cover her leave.

42. Due to her disability Plaintiff was out of work on Short Term Disability for a brief period.

43. On January 9, 2019, Plaintiff emailed Mr. Benda and advised him she was medically released to return to work on January 14, 2019.

44. In response Mr. Benda sent an email to Plaintiff, Darrell Reed, Defendant's General Manager, and other Operations Managers announcing Plaintiff's upcoming return.

45. Plaintiff heard nothing from Defendant between her January 9, 2019 email and her return to work on January 14, 2019.

46. Plaintiff returned to work as scheduled on January 14, 2019. Plaintiff approached her cubical and immediately noticed that Ms. Brooks' belongings were at her cubicle and Plaintiff's own belongings were nowhere to be found.

47. Confused, Plaintiff immediately called Mr. Reed to find out what was going on. Mr. Reed was evasive at best and refused to provide Plaintiff with any answers.

48. Plaintiff's next call was to Mr. Benda. Mr. Benda was not in the office yet, so Plaintiff waited in Defendant's conference room (as Ms. Brooks was occupying Plaintiff's cubicle) for his arrival.

49. When Mr. Benda arrived, Plaintiff met with him in his office and was informed that her position was "no longer available."

50. Plaintiff was utterly shocked by this. She quickly inquired if there were any other management positions available or positions she could transfer into. Mr. Benda simply said there were not and did not engage in any further discussion with Plaintiff – her employment was over.

51. Defendant terminated Plaintiff due to her disability and in retaliation for requesting and using FMLA leave.

52. Plaintiff has been damaged by Defendant's illegal conduct.

53. Plaintiff has had to retain the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

**Count I: Disability Based Discrimination in Violation of the ADA**

54. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-53 above.

55. At all times relevant to this action, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

56. Plaintiff has an actual disability, has a record of being disabled, and/or is perceived as being disabled by Defendant.

57. Defendant is prohibited under the ADA from discriminating against Plaintiff because of Plaintiff's disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

58. Defendant violated the ADA by unlawfully terminating and discriminating against Plaintiff based on her disability.

59. Defendant intentionally discriminated against Plaintiff on the basis of her disability.

60. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

61. Defendant's unlawful conduct in violation of the ADA is outrageous and malicious, intended to injure Plaintiff, and has been done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

## Count II: Retaliation in Violation of the ADA

62. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-53 above.

63. Plaintiff engaged in protected activity under the ADA on more than one occasion while employed by Defendant.

64. Defendant engaged in intentional retaliation against Plaintiff for her participation in protected activity, specifically Plaintiff's request for protected medical leave.

65. Defendant's conduct violated the ADA.

66. Defendant's discriminatory conduct, in violation of the ADA, has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which she is entitled to damages.

67. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

68. Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling her to punitive damages.

## Count III: Retaliation in Violation of the FMLA

69. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-53 above.

70. Plaintiff was an employee eligible for protected leave under the FMLA.

71. Defendant is and was an employer as defined by the FMLA.

72. Plaintiff exercised or attempted to exercise Plaintiff's rights under the FMLA.

73. Defendant retaliated against Plaintiff for exercising or attempting to exercise her FMLA rights.

74. Defendant's actions were willful, knowing and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

75. Plaintiff was injured due to Defendant's willful violations of the FMLA, to which she is entitled to legal relief.

### Count IV: FMLA Interference

76. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-53 above.

77. Plaintiff was an employee eligible for protected leave under the FMLA.

78. Defendant is and was an employer as defined by the FMLA.

79. Plaintiff exercised, or attempted to exercise, her rights under the FMLA.

80. Defendant interfered with Plaintiff's lawful exercise of her FMLA rights.

81. Defendant's actions were willful, knowing, and voluntary, and otherwise done with malice and/or reckless indifference for Plaintiff's rights.

82. Plaintiff was injured due to Defendant's willful violations of the FMLA, to which she is entitled to legal relief.

### Count V: Disability Based Discrimination in Violation of the IHRA

83. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-53 above.

84. At all times relevant to this action, Plaintiff was in a protected category under the IHRA because of her disability.

85. Defendant is prohibited under the IHRA from discriminating against Plaintiff because of her disability with regard to discharge, employee compensation, and other terms, conditions, and privileges of employment.

86. Defendant violated the IHRA by unlawfully terminating and discriminating against Plaintiff based on her disability.

87. Defendant intentionally discriminated against Plaintiff on the basis of her disability.

88. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the IHRA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

89. Defendant's unlawful conduct in violation of the IHRA is outrageous and malicious, intended to injure Plaintiff, and has been done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

### Count VI: Retaliation in Violation of the IHRA

90. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-53 above.

91. Plaintiff engaged in protected activity under the IHRA while employed by Defendant.

92. At all times relevant to this action, Plaintiff was in a protected category under the IHRA because of her disability.

93. Defendant's conduct violates the IHRA.

94. Defendant's discriminatory conduct, in violation of the IHRA, has caused the Plaintiff to suffer a loss of pay, benefits, and prestige for which she is entitled to damages.

95. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

96. Defendant has engaged in discriminatory practices with malice and reckless indifference to the Plaintiff's statutorily protected rights, thereby entitling her to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, liquidated damages, and prejudgment interest thereon;

b) Granting Plaintiff costs and an award of reasonable attorneys' fees (including expert fees); and

c) Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:
**/s/ Gabrielle Klepper**
Gabrielle Klepper, Esq. (92815)
Gary Martoccio, Esq. (6313431)
**Spielberger Law Group**
4890 W. Kennedy Blvd., Suite 950
Tampa, Florida 33609
T: (800) 965-1570
F: (866) 580-7499
Gabrielle.klepper@spielbergerlawgroup.com
Gary.Martoccio@spielbergerlawgroup.com

*Counsel for Plaintiff*